# DEMING v. MOSS.

No. 2291.   Decided January 16, 1912.   Rehearing Denied March 22, 1912 (121 Pac. 971).

1. PARTNERSHIP—PARTNERSHIP PROPERTY—WHAT CONSTITUTES.  All property bought with partnership funds is *prima facie* the property of the firm, though the title is taken in the individual name of one or more of the partners.   (Page 506.)

2. TRIAL—DOCUMENTARY EVIDENCE—INTRODUCTION.  On an issue as to whether certain real estate belonged to a firm or was the individual property of the partner in whose name the title was taken, the partnership books having been produced in court, so as to be available to either party, defendant could not object that they were not introduced in evidence by plaintiff.   (Page 507.)

3. PARTNERSHIP—REAL PROPERTY—OWNERSHIP.  Evidence *held* to support a finding that certain real estate purchased in the name of one of the partners of a firm from the state was purchased with the funds of the firm, and belonged to it.   (Page 507.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Granville Deming against Josephine Moss, administratrix of the estate of E. H. Moss, deceased.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*A. R. Barnes* for appellant.

*Evans & Evans* for respondent.

### APPELLANT'S POINTS.

If land is deeded to one member of a partnership or to the several members, without any statement in the deed that such grantee or grantees held the land as the property of the

firm, the law presumes that the ownership is in the individual grantee or grantees, nor is this presumption rebutted by evidence that the land is used by the firm. (30 Cyc. 435; *Chamberlin v. Chamberlin,* 12 Jones & Spence, 116, 44 N. Y. Sup. Ct. 1; *Goepper v. Kuisenger,* 39 Ohio, 439; *Hardin v. Volge,* 61 N. Y. Supp. 735; *Bosworth v. Hopkins,* 85 Wis. 50, 5 N. W. 524.)

The question whether any particular property is partnership property depends upon the intention of the partners, which may be evidenced by an express agreement between them; or, in the absence of express agreement, may be implied from the circumstances under which such property was acquired and subsequently used. (*Waterer v. Waterer,* 15 L. R. Eq. 402; *Tidd v. Rines,* 26 Minn. 201, 2 N. W. 497; *Richards v. Manson,* 101 Mass. 484; *Holmes v. Self,* 79 Ky. 279; *Providence v. Bullock,* 14 R. I. 353; *Pepper v. Pepper,* 24 Ill. App. 316; *Fall River Whaling Co. v. Border,* 10 Cush. 462.) It may be that occupancy alone would not in all cases be sufficiently convincing to overcome the presumption of individual ownership. But use for partnership purposes is sufficient. (*Hammond v. Hopkins,* 143 U. S. 224.)

FRICK, C. J.

Respondent instituted this proceeding in equity to have certain real estate, which he alleged was purchased in the name of his partner, declared partnership property. Upon a trial of the issues, the court found the facts in favor of respondent, and those which are deemed material and controlling are, in substance, as follows:

That on the 15th day of June, 1900, one E. H. Moss (since deceased) and the respondent entered into a copartnership, under the firm name of Moss & Deming, for the purpose of carrying on the business of cutting, sawing, and dealing in lumber; that each of said partners owned a one-half interest in the property of said copartnership, sharing the profits and bearing the losses equally; that on or about the 18th day of

April, 1907, said partnership was dissolved by the death of said Moss; that the appellant is the widow of said decedent, and is the duly qualified and acting administratrix of his estate; that on the 30th day of July, 1903, said firm, by and in the name of said E. H. Moss, made an application to the State of Utah to purchase from it section 32 of township 2 north, range 9 east of Salt Lake meridian, and pursuant to said application a contract of purchase was entered into between said state and said Moss for and in behalf of said partnership; that respondent, subsequent to the death of said Moss, made payments out of his private funds on said contract of purchase, amounting to the sum of $311.04, and further paid the sum of twenty-five dollars as taxes on said section 32; that on the 12th day of July, 1910, the appellant, as administratrix of the estate of said Moss, paid to the State of Utah the balance due on said contract, and thereupon said state duly issued a patent for said land to the heirs of said decedent; that in the month of November of each year said partners would settle up their partnership transactions for the preceding year and divide the profits arising from said business, and set aside the necessary sums of money to pay the outstanding partnership obligations, including the payments to be made on said contract for the purchase of said section 32, purchased as aforesaid; that appellant paid taxes on said land to the amount of $8.83, and also paid the balance, as aforesaid, amounting to the sum of $272.16; that "the said E. H. Moss did not enter into said contract with the State of Utah alone for the purchase of said section 32, but that he made such contract as agent for and on behalf of said copartnership, and the court finds that said E. H. Moss did not make the payments which became due on said contract with the State of Utah up to the time of his death out of his own personal funds, nor did the said Moss pay the taxes due on said contract out of his own funds."

Upon substantially the foregoing findings of fact, the court made conclusions of law and rendered a decree, declaring said section 32 partnership property belonging to said firm of Moss & Deming, and ordered said land to be

sold and the proceeds thereof applied: (1) To the payment of partnership debts; (2) to repay respondent the sum of $336.64, the amount advanced by him on the purchase price of said land, and taxes; (3) to repay appellant the sum of $280.99 for money advanced by her on the contract to purchase said land, including taxes; and (4) that the balance remaining shall be divided between the respondent and appellant, as administratrix of said estate. The appellant prosecutes this appeal from said findings, conclusions, and decree.

It is insisted that the court erred in making all of said findings, and that they are not supported by the evidence, except the findings that respondent and the decedent, Moss, entered into a copartnership and conducted the business stated in said findings; that said partnership was dissolved by the death of said Moss; and that appellant is the duly qualified and acting administratrix of the estate of said decedent.

The evidence, in brief, is to the effect that the respondent and the decedent, Moss, leased a sawmill from Moss brothers (of whom said decedent was one), and used it for sawing up native timber and selling the lumber obtained therefrom; that about the time the land in question was purchased their supply of timber was about exhausted, and they were required to either purchase more timber, or cease sawing lumber; that for the purpose of obtaining more timber the decedent, in his own name, with the knowledge and consent of respondent, made application to the State of Utah to purchase section 32 aforesaid, which was timber land; that after the land had been purchased the sawmill leased by the copartnership was, in the year 1903, moved from the old location to the land in question, and the trees or timber growing and standing thereon were, during the years 1903 to 1907, cut into logs, transported to the sawmill, and sawed into lumber, which was disposed of by the partnership on partnership account; that when Moss died in 1907 the best timber standing on said land had about all been cut and sawed into lumber, which had been sold. To show that the land was paid for by partnership funds, respondent produced a Mrs.

Wright, his daughter, as a witness, who for several years kept such books as the partnership kept, and to which both partners had constant access. She, in substance, testified that in the month of November in each year, when the lumbering season in that territory had ended for that year, the partners would settle up the year's business and divide the profits; that at said settlements certain sums of money would always be set aside to meet and discharge the outstanding obligations of the partnership, and that an amount, sufficient to make the annual payments for the land in question, would always be set aside at the time said settlements were made.

It also was shown that during some of the years that the sawmill was being operated upon the section in question the copartnership had leased the same, or portions thereof, for grazing purposes, and the rent received was paid to the copartnership. With respect to this matter, a witness produced by respondent testified that on one occasion he spoke to Mr. Moss, suggesting to him that it would cost quite a considerable sum to keep the hands who were employed at the sawmilling business provided with mutton. To this the witness said Moss replied: "Yes; but that goes on the rent." "He says: 'You know, Gran. and I bought this section here together. We are in partnership on this section where the mill is now, and we rent a part of the land to Blonquist.' " In mentioning the name "Gran." Mr. Moss referred to Granville Deming, the respondent. Another witness testified that he had leased the section for several years from the partnership; that on one occasion he asked both Mr. Moss and the respondent whether they would not sell the land to the witness. To this Mr. Moss, in presence of the respondent, replied: "We will give you the first chance to buy it when we get the timber off." Another witness, testifying on behalf of respondent, said that Mr. Moss told the witness that "we just bought that ground (section 32) in time." That he made this remark because others were desirous of purchasing the land at that time. The witness also asked Mr. Moss whether they could "throw up" their contract, and, if so, if the land would revert to the State of Utah. Mr. Moss replied that

"they (he and Deming) either had to pay cash for this land before they could remove timber, or else one make application and the other go his bondsman, or some other party. He (Moss) said that he made the application, and Mr. Deming acted as bondsman."

Appellant's counsel, however, strenuously insists: (1) That the complaint is based upon the theory of an express trust, and (2) that, for that reason, the foregoing evidence is wholly insufficient to sustain such a trust; and therefore the judgment cannot be sustained. Counsel cites quite a number of cases which he says sustain his contentions. While we concede that the cases cited by counsel declare the law with respect to express trusts to be as contended for by him, yet we do not agree with him that the complaint is based upon an express trust, nor that the facts and circumstances disclosed by the record before us make the trust in question an express trust. The only legal questions involved are: (1) Was the land in question purchased for and devoted to partnership purposes; and (2) was it paid for by partnership funds?

The law with respect to what, *prima facie* at least, constitutes partnership property as between the partners is well stated in 22 A. & E. Ency. L. (2d Ed.) 91, in the following words:

"All property bought with funds belonging to a firm is, *prima facie* at least, the property of the partnership, though the title to such property be taken in the individual names of one or more of the partners. Thus land bought or improved with partnership funds is treated, at least as between the partners, as partnership property."

Again, at page 93 of the same volume, it is said:

"It is immaterial in equity whether the legal title to partnership personalty or realty stands in the name of a copartner or in the joint names of all, where the intent is to convey to the partnership. The possessor of such legal title will be deemed to hold such property in trust for the partnership purposes. The property is, under such circumstances, deemed to be that of the partnership, and, as such, subject to all its incidents; and a court of equity will deal with it as such."

In 30 Cyc. 428, the rule is stated as follows:

"Where title to real property, acquired by or for a partnership, is taken in the name of one of the partners, there is a resulting trust in favor of the partnership, which may be established by parol evidence, so that the land may be charged with the interest of the partnership. . . . Whether real estate purchased with partnership funds was purchased as partnership or individual property depends upon the intention of the parties as manifested by all the surrounding circumstances and the use to be made of it. Where real estate is bought with partnership funds for partnership purposes, and is appropriated to partnership uses, or entered and carried in the assets of the firm as partnership assets, equity regards it as partnership property, without regard to the name in which the legal title is taken; but the legal title is left undisturbed, except so far as may be necessary to protect the equitable rights of the respective parties."

It is not necessary to cite the numerous cases referred to, both in the Encyclopedia of Law and Cyc., to which we have referred.

Counsel has also referred us to the case of *Chambers v. Emery*, 13 Utah, 374, 45 Pac. 192; but there is nothing in that case which in any way affects either the law as it is stated above, or the conclusions we have reached in this case. Nor is the fact controlling that there was some evidence adduced on behalf of appellant from which it could have been inferred or found that Mr. Moss borrowed the money with which to meet the first payment on the land in question. Neither can appellant be heard to complain because the partnership books were not introduced in evidence by respondent. The books were produced in court, and were thus as available to appellant as to respondent, if they contained any competent evidence relating to the controversy.

Upon the whole record, we think that the evidence sustains the findings of fact, and that the findings support the conclusions and judgment. It might have been proper for the court to have made specific findings upon one or two of the matters set up in appellant's answer. In view, however, that there is no claim that the findings in

that regard are insufficient, and since the appellant is not prejudiced by reason thereof, the question becomes immaterial.

For the reasons given, we think the judgment should be affirmed, at the cost of appellant. It is so ordered.

McCARTY and STRAUP, JJ., concur.

